## CARBERRY & CASEY v. WORRELL, USE A. B. BURNS.

1. **CONTINUANCE.**  *Absent witness.  Residence unknown.*

   It is not error to refuse a continuance applied for because of the absence of a witness where it is shown that he is a transient person, without business or other ties in this state, and that the applicant has no knowledge of his whereabouts, and there is no reason to believe that his testimony could be procured in future.

2. **EVIDENCE.**  *Expert testimony.  Ordinary merchandise.  Value.*

   Expert testimony is not required to prove the value of a lot of " hardware, dry goods, groceries and miscellaneous articles."  A witness, though a dealer in only one of the lines mentioned, is competent to testify as to the value of articles in all.

3. **SAME.**  *Suit on indemnifying bond.  Value of goods.*

   In an action on an indemnifying bond given by a judgment-creditor who has wrongfully sold under execution a stock of merchandise of a third person, the defendant, by such sale having placed it beyond the power of plaintiff to exhibit the goods to witnesses in order to show their value, it is competent to prove the general character of the stock and the average value of articles composing such stocks.  Under such circumstances, it is not necessary for the plaintiff to show the quality and character of each article as preliminary to the examination of witnesses as to value.

4. **INSTRUCTION.**  *Weight of evidence.  Fact assumed as true.*

   Though the court may not charge upon the weight of evidence, it is not error to assume as true a fact which is fully established, and as to which there is no controversy.  *Lamar* v. *Williams*, 39 Miss. 342.

5. **SAME.**  *Good faith of sale.  Right of creditors.*

   In a controversy involving the right of creditors to subject to their judgment property claimed by another under purchase from the judgment debtor, it is not error to refuse instructions submitting to the jury the question of the debtor's fraud in making the sale, when it does not appear that the debt upon which the judgment is founded existed at the time of the transfer.

6. SAME.   *Code* 1880, § 1300.   *Transacting business for another.   Immaterial error.*
   Where a judgment debtor takes charge of a store and conducts the busi-
   ness, and the goods are levied upon as being liable to his debts under
   § 1300, code 1880, it is error to instruct that, in order to render the goods
   so liable, it must be shown that he transacted the business in his own
   name *from the time he took posession to the time of the levy.*   But, where such
   an instruction is given, if the error is cured by other instructions an-
   nouncing the correct rule as applicable to the facts, it will be treated as
   immaterial and will not cause a reversal.

7. CODE 1880, § 1300.   *Transacting business.   Clerk of owner.*
   The goods of a principal do not become liable to the debts of a mere clerk
   in his store under the operation of § 1300, code 1880.   To subject the
   goods to the debts of one other than the owner under this section, that
   other must have "transacted the business *in his own name.*"

FROM the circuit court of Warren county.

HON. J. D. GILLAND, Judge.

On the trial of this case it was shown that after the sale of the
stock of goods by the Vicksburg Liquor & Tobacco Co. to Miss
Burns, it was replenished in her name, and privilege license was
also taken out in her name, but there was no sign posted at the
place of business until about the time of the levy.   There was tes-
timony tending to show that the goods were sold by the sheriff at a
sacrifice.   They brought $215.20.   The value of the stock, as stated
in the inventory introduced by plaintiff, was $1423.10.   The ver-
dict fixed the valuation on the day of the levy at $1000; interest
being added at the time of trial, the verdict was for $1087.

At the instance of the plaintiff, the following instructions were
given:—

"1. Should the jury believe from the evidence that the plaintiff
was the owner of the goods at the time they were seized, then the
jury will find for the plaintiff, unless she has forfeited her right
to recover by reason of some one of the defenses set up in the de-
fendant's pleas."

"2. The burden of proof is upon the defendants to prove and
show to the satisfaction of the jury that the business where the
goods were seized, and at the time they were seized, was being
conducted in the name of P. T. O'Shea, and not in the name

of A. B. Burns, if they rely upon this fact to justify the seizure and sale of the goods."

" 3. If the business where the goods were seized was being conducted at the time the goods were seized in the name of A. B. Burns, and not in the name of P. T. O'Shea, then the seizure was unlawful."

" 4. The plaintiff had the right, through her agent, to employ P. T. O'Shea as a clerk, and put him in her stores to sell her goods ; and this fact would not by itself render her property liable for the payment of his debts."

" 5. Should the jury believe from the evidence that McIntyre, as agent for plaintiff, was conducting, controlling and managing the business at stores Nos. 201 & 203 Levee street, for and in the name of the plaintiff, A. B. Burns, at the time the goods mentioned in the return of the sheriff were seized upon by him, and that P. T. O'Shea was there simply as a clerk or employé of the said McIntyre ; that he was subject to McIntyre's orders, and was doing McIntyre's bidding, and was conducting the business in the name of the plaintiff, A. B. Burns, then the jury should find for the plaintiff."

" 6. The jury, in fixing the value of the goods seized, are not bound by the return of the sheriff, but by the value as shown by all the evidence in the case."

" 7. The court instructs the jury that if they believe from the evidence that the goods in question were the property of plaintiff, Miss Burns, then they must find for plaintiff to the extent of the actual value of the goods taken by the sheriff and sued for in this action, unless they believe from the evidence that from the time of O'Shea's taking possession of the property from McIntyre until the levy, he was conducting the business in his name, and the mere appearance of his being in the store selling goods is not sufficient evidence of his conducting the business in his·name.    It is lawful· for a person to appoint an agent or clerk to sell her goods without the goods being subjected to the debts of the agent.    In order to make them so subject, the business must have been conducted in

the name of such agent in fact or to all appearances, so far as buying goods and otherwise carrying on the business."

" 8. If the jury find for plaintiff, they must add six per cent. interest on the actual value of the goods from the date of the levy."

" 11. The jury must not consider any of the items of the book introduced by plaintiff in evidence, which were not checked off by some one of the witnesses who testified as to the value of the goods."

At the instance of defendants, the court gave the following instructions :—

" 1. The court instructs the jury that if they believe from the evidence that, although the stock in controversy was the property of Miss A. B. Burns, under a valid bill of sale from the Vicksburg Liquor & Tobacco Co. to her, yet if they further believe from the evidence that prior to such sale, P. T. O'Shea was the owner of said stock, and afterwards continued to sell goods in said stores, *in the usual course of trade, and not merely occasionally,* and made his home and location in his former store, and that no sign disclosing Miss Burns' ownership was posted thereon conspicuously in letters easy to be read, they will find for defendants."

" 2. The court instructs the jury that the fact that the sheriff or the defendants' counsel had notice prior to the levy of the execution of Miss Burns' ownership, is an immaterial circumstance, if they further believe from the evidence that after Miss Burns' purchase, O'Shea *continued* apparently in charge thereof as owner, or as agent *continued* in the conduct of the business, and that no conspicuous sign over the door of the store-house disclosed Miss Burns' ownership, in letters easy to be read."

" 3. The court instructs the jury that the licenses posted in the store of Miss Burns in her name, were not such signs of the ownership of the buiness as the law requires ; if they believe from all the evidence, that after Miss Burns' purchase of the goods O'Shea *continued* apparently in charge of the business and its conduct, and there was no other sign but the said licenses, they will find for the defendants."

The italicized words in these instructions indicate modifications made by the court over objection of defendants.

The court refused to give the following instructions asked by defendants :—

" 4. The court instructs the jury that if they believe from the evidence that the two sales, from O'Shea to McIntyre, and back from McIntyre to O'Shea's cousin, Miss Burns, were made without consideration, or for the purpose of defrauding O'Shea's creditors, they will find for defendants.

" 5. The court instructs the jury that if they believe from the evidence that the sale of the stock from O'Shea to the Vicksburg Liquor & Tobacco Co. was made for the purpose of hindering, delaying or defrauding the creditors of P. T. O'Shea, they will find for defendants.

" 6. The court instructs the jury that the burden of proving every material element of her case is on the plaintiff, and if she has failed to do this to the satisfaction of the jury, they must find for the defendants."

Judgment in favor of plaintiff for $1087.00 and costs. Motion for new trial overruled. Defendants. appeal. The opinion contains a further statement of the case.

*Henry & Thompson,* for appellants,

Filed an elaborate brief, as to the questions decided by the court, making the following points :

1. The court erred in refusing a continuance, and forcing defendants to a trial in the absence of their witnesses. There should have been positive proof that it was impossible to procure the attendance of the absent witnesses. On this point we refer to 4 How. (Miss.) 330 ; 25 Miss. 121 ; 33 Ib. 383 ; 44 Ib. 669.

2. The opinions of expert witnesses are only competent when based upon facts either admitted or assumed to be true, and the jury should know all the facts upon which the opinion is based. Stevens' Dig. of Ev. 54 ; Rogers on Expert Testimony, §§ 22, 31, 38, and authorities there cited ; 3 Met. (Ky.) 18.

Expert testimony is merely evidence, and the jurors are the

judges of its weight. Rogers on Expert Testimony, § 37 ; 1 Sawyer C. C. 512 ; 1 Curtis C. C. 1 ; 30 Miss. 110 ; *Head* v. *Hargrave,* 105 U. S. 45.

The witness should not be examined in such manner as to compel him to pass upon a question of fact, and thus invade the province of the jury. Rogers on Expert Testimony, § 24 ; 121 Mass. 446 ; 15 Wall. 9.

In this case the expert witnesses merely testified from seeing the inventory. They had no knowledge of the quality, condition and class of the goods, and these facts were not before the jury in giving the opinion. Without this the evidence was incompetent. Wharton's Ev. § 447 ; 14 Barb. 206 ; 12 N. Y. 538 ; 61 Ib. 624 ; 2 Allen, 296 ; 13 Gray, 546 ; 37 N. H. 23 ; 47 Ib. 120 ; 66 Ind. 94 ; 70 Ib. 349 ; 65 Miss. 205 ; 14 Gratt. 529 ; 28 Ga. 237 ; 58 Mo. 425 ; 40 Mich. 120 ; 28 Ohio St. 547 ; 39 Iowa, 615 ; 5 Redf. 284 ; 52 Me. 304 ; 35 Vt. 415 ; 39 Md. 251.

The experts here were not competent to testify as to the value of articles outside of the lines in which they dealt. The articles that were properly checked and embraced within the sworn estimates, only amounted to $134.13 in value, and this was all that the plaintiff was entitled to recover upon her own theory of value, and assuming that the inventory was correct.

3. In the fifth instruction, which was refused, defendants asked the court to charge the jury that if they believed the sale of the goods from O'Shea to the Vicksburg Liquor & Tobacco Co., or from it to Burns, was made with the intent to hinder or defraud creditors of O'Shea, the verdict should be for defendants. Under the evidence this instruction should have been given. It is not disputed that during Miss Burns' absence, O'Shea was in complete control of the business, and he was there at the time of the trial, and there were other facts warranting this instruction. The court refused to submit the question of fact to the jury whether these purchases were fraudulent. This was error. 50 Miss. 648 ; 54 Ib. 79.

4. It was error to modify the instruction asked by defendants as to the effect of § 1300 of the code. Under this statute, in the

absence of a true sign, the external and palpable *indicia* of owner-ship stamps real ownership upon the property used in the business as against creditors. As to this we refer to the decisions of this court in *Paine* v. *Hall,* 64 Miss. 175; *Loeb* v. *Morton,* 63 Ib. 280; *Hamblet* v. *Steen,* 65 Ib. 474; *Quin* v. *Miles,* 59 Ib. 375; *Wolf* v. *Kahn,* 62 Ib. 814.

If O'Shea remained at the store and conducted the business, the goods became liable. The length of time is immaterial. When we consider that he had continued there uninterruptedly in charge of the business, being temporarily absent on one occasion, it is readily per-ceived that by the modifications in defendants' instructions the jury was in fact informed that his presence and authority in the store and the *indicia* of ownership created thereby were of no weight. The court will not assume controverted facts or charge on the weight of evidence. 38 Miss. 280; 48 Ib. 470; 52 Ib. 149; 63 Ib. 333.

The object of § 1300 was to apprise the public of secret claims by the requirement of a true sign, or, failing in that, by fixing as to creditors antecedent, or subsequent, ownership in the apparent owners. *Gumbel* v. *Koon,* 59 Miss. 264, and authorities cited above. The great principle which underlies this statute is that which is expressed in the name of the chapter in which it is found, *the prevention of fraud.* It accomplishes this by uniting title and possession.

(Counsel here reviewed the facts at length, contending that the case was controlled by § 1300 of the code.)

5. In all the instructions given for the plaintiff, the test whereby to determine the liability of the goods to the execution, was laid down to be whether, rightfully or wrongfully, the business was carried on in the name of O'Shea. If it was so conducted in fraud, the seizure was lawful, and the jury should have been advised as to this and allowed to pass upon the question. This court has always held it is error to charge on the general rule without stating such exceptions as are applicable. 2 S. & M. 227; 38 Ib. 280; 41 Ib. 696. Or to charge on a hypothetical state of facts unless such state of facts is complete. 54 Miss. 584; 56 Ib. 318; 58 Ib. 500.

6. Plaintiff's seventh instruction was clearly erroneous. To make the goods liable under § 1300 of the code, it was not necessary that O'Shea should remain in possession conducting the business from the time he took charge until the levy.

*Miller, Smith & Hirsh,* on the same side.

1. The seventh instruction for plaintiff is erroneous. The court could not assume that O'Shea's connection with the business was a " mere appearance," nor was it necessary for his conduct of the business to continue until the time of the levy in order to make the goods liable. This erroneous idea that it was necessary for O'Shea's acts of ownership to have been continuous up to the time of the levy, controlled the court in modifying defendants' instructions.

The plaintiff's instructions were misleading. In them the court assumed the case against defendants.

2. The court erred in admitting evidence as to the ownership of the goods, and in the instructions given to the jury on that subject. The evidence wholly fails to sustain the verdict. It was a flagrant error to instruct the jury that they were bound by the evidence of the experts who testified. The jury have the power to refuse their credit to such testimony, and no action of the court should control the exercise of their right to weigh its credibility. Thompson on Trials, § 1037.

The testimony of experts is entitled to the same credit, and is to be tested by the same rules as are applied to the evidence of other witnesses. *It is not conclusive.* Lawson on Experts and Op. Ev. p. 240 ; *Head* v. *Hargrave,* 105 U. S. 45.

In this case two of the experts had never seen the goods and knew nothing of their condition, and the third had only made a casual examination. The inventory with all the check marks was introduced, and the jury were left to guess at the value of the goods, and their verdict was seven to eight times larger than the legitimate testimony warranted.

We respectfully submit that the jury were not properly instructed, that much of the testimony offered by plaintiff ought to have been excluded, and that the verdict was grossly excessive.

*Dabney & McCabe,* for appellee.

1. There was really no contention as to the fact of the sale by O'Shea to the Vicksburg Liquor & Tobacco Co., and none as to the sale by that company to Miss Burns. There was no testimony which tended to show any transfer of the property to O'Shea. No witness testified to any fact indicating that O'Shea was conducting the business *in his own name,* so as to make it liable under § 1300 of the code. On the other hand, the evidence is conclusive that it was conducted by and in the name of Miss Burns. A verdict for defendants could not have been sustained. *Bufkin* v. *Lyon, ante,* 255.

2. Appellants, with full knowledge that the property belonged to appellee, caused the sheriff to levy on it under their judgment against O'Shea. At the trial they offered no evidence whatever as to the value of the property which was thus taken from appellee. It comes with ill grace from them to object to the verdict because of the character of the evidence introduced in support of her claim. The articles were inventoried at $1423.10. The jury valued them at $1000. The verdict was amply sustained by the evidence. We do not regard the witnesses who testified as to value as experts in any sense. They had a knowledge of values of certain kinds of property described in the inventory, and testified as to those things. As the property had been taken and sold, plaintiff offered the best evidence obtainable as to value.

3. The court did not err in the instructions. Only one of plaintiff's instructions, the 7th, can be seriously questioned. Taken as a whole, it announces the law correctly. But, if it is not technically correct, taking all of plaintiff's instructions together they properly state the law of the case.

The court properly refused some of the defendants' instructions. If the court should hold the 6th instruction to be correct, defendants were not prejudiced by its refusal. By the other charges the jury was amply instructed as to the rights of the parties, especially on the only real defense set up. The jury had the case and decided it according to the evidence.

Argued orally by *J. B. Thompson* and *J. Hirsh*, for appellants, and by *M. Dabney*, for appellees.

COOPER, J., delivered the opinion of the court.

The defendants, Carberry & Casey, caused an execution, issued upon a judgment recovered by them against one O'Shea, to be levied upon a stock of goods claimed by Miss Burns, the usee in his suit, and the same was sold. A doubt having arisen as to the ownership of the goods, the sheriff demanded and received a bond of indemnity under the statute, and it is upon this bond that this suit is brought.

The business in which the stock of goods seized was used, unquestionably at one time belonged to O'Shea, but, before the rendition of the judgment of Carberry & Casey (and so far as the record shows before the debt which was the foundation of that judgment was contracted), O'Shea had sold out his entire stock to the Vicksburg Liquor & Tobacco Company, which company sold the same to Miss Burns.

At the time the goods were seized, under execution, Miss Burns was in California, where she had gone on account of ill health. She had left a power of attorney with one McIntyre, who testified that he had employed O'Shea, the former owner of the store, and the judgment debtor, as clerk for Miss Burns, and that O'Shea was so acting at the time of the levy of the execution. The defendants' contention is that O'Shea was in possession of the store, apparently as owner, and was transacting business in his own name, and that there was not any "sign" displayed about the premises indicating who the true owner was, by reason of which the goods were subject to the claims of his creditors under § 1300 of the code.

When the case was called for trial, the defendants applied for a continuance because of the absence of two witnesses, Joe Wiley and Joe Mallett. The plaintiff admitted that the witness Wiley would, if present, testify to the facts set out in the application for a continuance, but resisted the application in so far as it was based upon the absence of the witness Mallett, on the ground

that the whereabouts of Mallett were unknown, and it was improbable that his attendance could be secured at any subsequent term of the court.   On this objection, evidence was submitted to the court, tending strongly to show that Mallett was a transient person, without home, relatives, business or ties of any sort in this state, and that he had not been seen here for months before the hearing.   The plaintiff, on this examination, put the defendant who had sworn to the application for a continuance and the attorney who had supplied the information upon which it was based, upon the stand as witnessses, and they admitted that they knew nothing of the then whereabouts of the absent witness, and had no ground for believing that his attendance could be secured at any subsequent time.   Under these circumstances the court rightly refused to grant the continuance.   There was no probability that a different condition would exist at another time, that the attendance of the witness or his deposition could be secured.

The assignments of error most strongly urged by appellants relate to the alleged insufficiency of the evidence of the value of the goods seized and sold, and to the action of the court in granting certain instructions for the plaintiff and in modifying those prayed by defendants.   We examine these in their order.

To prove value, the plaintiff introduced the return of the sheriff in so far as it showed what goods had been seized, but not as to the value noted by the officer in his return.   She then introduced an inventory, written in a book by certain agents of the plaintiff at the time of the levy of the writ, which inventory the defendants admitted contained a correct enumeration of the articles levied upon under the judgment.   Opposite each item in this inventory the agents of the plaintiff by whom it was made had noted their valuation of it.   The persons by whom this inventory had been made had both died before the trial, and in introducing the inventory and in instructions asked by her, the plaintiff restricted the jury from considering as evidence the notations of value made by the deceased persons.   To establish such values, she introduced three witnesses, one a grocer, one a dealer in hardware, and one a dealer in dry goods. These witnesses were shown the inventory and requested to look

over the items appearing thereon and the valuation noted opposite thereto, and to indicate to the jury what specific valuations they approved or disapproved as correct or incorrect. The hardware man indicated the valuations approved by him by noting opposite the item a circle, thus O; the grocer indicated his approval by checking opposite the item a cross check mark, thus X; the dry-goods man for the same purpose used a V check mark.

The contention of the defendants is that these witnesses were introduced as experts, and being so only in their respective lines, any evidence given by either touching the values of articles not of the class as to which he was an expert, was incompetent. In other words, that the grocer could not testify as to the value of calico; the hardware man could not speak of the value of sugar, nor the dry-goods dealer of that of a knife or a chain.

The error into which counsel have fallen is apparent. It is that of dealing with these witnesses, who were testifying in reference to matters of common and almost universal knowledge, as technical experts in an abstruse science. Unless the jurors who deliberated upon the case were exceptionally fortunate men, we doubt not that they had spent much of their substance in acquiring a practical knowledge of the value of hardware, dry goods, groceries, and miscellaneous articles, such as were seized by the sheriff under the execution; and each would probably have been found sufficiently informed to speak as a witness, though none of them may have been an "expert" in the sense in which counsel use that term. A very large majority of men are experts in reference to the common affairs of life. The items on the inventory, valued by these witnesses, exceeded in the aggregate the sum found by the jury for the plaintiff's damages; and, in our opinion, the verdict is as to the value of the goods seized abundantly supported by the evidence in the cause, which evidence consisted not solely of the testimony of these witnesses, but also in part of the original invoices of the goods when bought by the plaintiff.

In reference to the action of the court upon the instructions, it is only necessary to say that as applied to the facts of this case the defendants have no just cause of complaint. The fact of the sale

by O'Shea to the Liquor & Tobacco Company, and the sale by this company to Miss Burns are not controverted by the defendants, save by the suggestion that the sale by O'Shea was in fraud of his creditors, and since it does not appear that the appellants, Carberry & Casey, were at that time creditors to him, they are not permitted to raise that objection to its validity. Though the court may not charge upon the weight of evidence, it is not error to assume as true a fact which is fully established, and as to which there is no controversy. *Lamar* v. *Williams*, 39 Miss. 342; *Heirn* v. *McCaughan*, Ib. 17.

It is not clear that, by the 4th instruction, the court assumed as a fact that the plaintiff through her agent employed O'Shea as her clerk, and put him in her store to sell her goods. The purport of the instruction was to inform the jury that the goods of a principal did not become subjected to the debts of a mere clerk under the operation of § 1300 of the code, and this is a correct announcement of the law. It is impossible, we think, that this instruction could have been accepted by the jury, as the expression of opinion by the court of the facts upon which the rule announced was predicated.

The 7th instruction of the plaintiff is subject to verbal criticism, in that it suggests that O'Shea must have conducted the business "from the time he took possession from McIntyre, until the levy" to subject the property to liability for his debts. If there appeared anything in evidence tending to show a different condition of things at any period of this intervening time, this error would be fatal to the judgment secured by the plaintiff. But if the jury should have found that at any time O'Shea was so conducting the business as to subject the goods used therein to liability to his debts, it is manifest from the whole evidence, that it also would have found that such transaction of the business was "from the time he went in possession under employment of McIntyre up to the time of the levy." It is to be noted also that by instructions for defendants the jury was informed that if "after" Miss Burns' purchase, O'Shea conducted the business as his own, the property seized was subject to his debts. The error evidently sprang from inadvertence, for

the court properly instructed when asked by the defendants that conducting the business *after* the purchase by Miss Burns, rendered the goods liable to be seized by his creditors. The error was therefore harmless and immaterial.

We are not to be understood as approving the instructions secured by the defendants, in so far as they announce that the goods were subject to the debts of O'Shea if, as clerk, he conducted the business for Miss Burns. This is not the law, as repeatedly announced. To subject the goods to the debts of one other than the owner, that other must have "transacted the business in his own name." Code, § 1300.                                                        *Affirmed.*

Counsel for appellant filed the following suggestion of error:

1. It was not claimed that the witnesses, as to the value of the goods, were "technical experts in an abstruse science;" but that, as their testimony consisted largely of opinion evidence, their mere opinions were valueless unless based upon knowledge of the subject to which the opinions related.   1 Wharton Evidence, § 447.

But it is said by the court that each of the jurors might have estimated the value of the stock from his experience. If this is true, their observation must have taught them that there were various qualities, conditions, classes, and prices, of every sort of merchandise; that its values were fluctuating; and, that, unless the jurors were cognizant of the intrinsic properties of the thing, they were incapable of a just estimate. If a verdict can be sustained, because a hundred items appear upon the inventory, about the value of which nobody appears to have had any knowledge, it seems useless to have witnesses. And if juries are not bound by the testimony of skilled experts in science, why should they be "bound" by the testimony of witnesses who speak on matters of common knowledge of which the jurors can judge as well as they?

We ask the court's attention to the witnesses, Lamkin and Rutherford; to note their doubts and perplexity—and finally their frank admissions that, without knowing the class and qualities of the goods, their estimates, for all practical purposes, were worthless. On this point, see 7th Am. & Eng. Enc. L. p. 512.

2. The court assumes as a fact that these witnesses "testified as to the value of the articles as to which they were not experts." This is error in fact. The jury were instructed for the plaintiff, "not to consider any of the items in the book introduced by plaintiff which were not checked off by some one of the witnesses who testified as to the value of the goods."

The witness Emmich stated that he had "examined the inventory for the purpose of ascertaining whether the groceries put down in it had the correct prices attached;" that he had been "in the grocery business for eight years, and should be familiar with the price of groceries; that only the V check marks which pertained to groceries were his."

So the witness Rutherford stated that the prices on the inventory were correct where attached to dry goods, by which he said he meant articles usually kept and sold in dry goods stores.

And the witness Lamkin swore that he was only called upon to testify to and examine "those items which pertained to our line" (hardware).

Thus it is apparent that these witnesses avowedly did not testify, nor attempt to testify, to any other goods than those with which they were specially familiar. And from this it follows that every item on the inventory not belonging to one of these three kinds of goods, or which bore the check mark of another witness than the proper one, was not before the jury as evidence, and that if included in the verdict, the latter is by so much excessive. We do not contend that these witnesses should not have testified to the value of any items other than those with which they were familiar; but that *in fact* they did not do so, and expressly limited their testimony to such goods only as they were in the habit of dealing with, and had "checked" accordingly. It is apparent that a large number of the V checked items are not groceries, and as the grocer only checked groceries with that mark, the items not groceries, but checked with that mark, were not checked by him, and were improperly before the jury.

Who made these bastard check marks is not clearly shown. If made without authority, surely they were not in evidence; and if

the witnesses disclaimed them, as they did, surely the same result would follow. Had it not been for the admission of the inventory and the plaintiff's 4th instruction, it is impossible that the jury should have regarded them.

But it is said that "the verdict is abundantly supported by the evidence, which consisted not solely of the testimony of these witnesses, but also in part of the original invoices of the goods." The invoices were not introduced in evidence to prove value. This will be seen by plaintiff's 6th instruction. In addition to this, it is not shown that the goods covered by the invoices were identical with those seized by the sheriff. We think it is manifest that this court has enlarged the scope of the plaintiff's case as presented in the court below, and committed a grave error in treating the invoices as evidence of value.

3. If Joe Wiley is to be believed, the business was conducted in 1888 and 1889 by O'Shea—said Burns being only a housekeeper; that during said years he bought and sold goods in his own name and on his own account, and acted as if he was sole owner of the business so carried on by him. Whether this was true or not was a vital issue, because it contradicted the evidence that O'Shea sold to the Vicksburg Liquor & Tobacco Co., and it to Burns. It was therefore error for the court below to assume these sales as established facts, because the evidence as to them was contradicted by Wiley. It should have reached the jury unaffected by any expression of opinion from the court.

Reply to suggestion of error.

Counsel, and not the court, are mistaken as to the matters of fact upon which error is suggested.

Upon pages 105 and 106 of the record, it appears that the invoices referred to in the opinion were introduced and read in evidence, and, in order to save expense in making record of the same, it was agreed that the originals should be brought to this court, which was done. The agreement of counsel in express terms is that these invoices "amount in the aggregate to $2744.94." Record, page 106, line 7 from top.

So, too, counsel are mistaken in saying in their suggestion of error: "It is apparent that a large number of the V checked items are not groceries, and as the grocer only checked *groceries* with that mark, the items not groceries, but checked with that mark, were not checked by him, and were improperly before the jury."

On re-direct examination the attention of Emmich (the witness referred to) was specifically called to one check mark opposite the item of lemon sugar, and testified that this mark was on the book when he got it, and, being requested, examined the inventory, and having done so replied to a question by plaintiff's counsel that he saw no other item checked with that mark except those he himself had checked. Record, page 132, first five lines. Counsel's contention that it devolved upon the plaintiff to show the precise quantity and character of each and every article in the stock of goods seized and sold by the judgment creditors as a preliminary to the examination of the witness as to value, would enable the trespasser to escape liability, because of the very wrong he perpetrates. By selling the goods the judgment creditors put it beyond the power of the plaintiff to exhibit them to her witnesses. In this condition of things, she did the best she could by proving the general character of the stock and the average value of the articles composing such stocks. This was sufficiently specific as against the defendants who should have proved, if they thought it important, that the goods seized were not an average of the class to which they were assigned by the plaintiff's evidence.

*Denied.*